IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MEREDITH LODGING LLC, an Oregon limited liability company; MEREDITH LODGING OREGON COAST LLC, an Oregon limited liability company; MEREDITH LODGING CENTRAL OREGON LLC, an Oregon limited liability company,<br><br>        Plaintiffs,<br> v.<br><br>VACASA LLC, a Delaware limited liability company,<br><br>        Defendant. | Case No. 6:21-cv-326-MC<br><br>OPINION AND ORDER |

MCSHANE, Judge:

       Plaintiff Meredith Lodging LLC and two wholly owned subsidiaries (collectively, "Plaintiff") bring one claim of false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)B) against Defendant Vacasa LLC.[1] The parties are market competitors, both managing vacation rental properties located in Oregon. Plaintiff alleges Defendant "has embarked on a smear

---

[1] Plaintiff also brings claims of defamation and trade libel under Oregon law. The Court declines to address the merits of those claims pending a determination that it has subject matter jurisdiction of this action under the Lanham Act.

1 – OPINION AND ORDER

campaign surgically targeted at [Plaintiff's] homeowner customers, designed to unfairly snuff out that competition." Compl ¶ 1; ECF No. 1. Defendant moves to dismiss, arguing Plaintiff failed to plead that the alleged false advertising was sufficiently disseminated and, therefore, the alleged statements do not constitute "commercial advertising" under the Lanham Act. As outlined below, the Court agrees.

## BACKGROUND

Plaintiff "manages vacation rental properties throughout Central Oregon and along the Oregon coast." Compl. ¶ 3. Defendant manages rentals around the globe and "directly competes with [Plaintiff] in the vacation rental markets for properties located in Oregon." *Id.* at ¶ 6. "The short-term vacation rental industry has grown rapidly in Oregon . . . [as] part of the new 'sharing economy[.]'" *Id.* at ¶ 11. "Vacation rental property management companies meet this need by combining local presence and technologies to synchronize and manage booking, reception, cleaning, maintenance, security, and other aspects of property management for homeowners." *Id.* at ¶ 12.

Plaintiff operates local management offices in Bend, Lincoln City, Bella Beach, Waldport, Depoe Bay, Neskowin, Pacific City, Manzanita, Seaside, and Sunriver. *Id.* at ¶ 13. A vacation rental management company is typically "compensated based on a percentage of the rent it collects from managing a homeowner's property. . . . This business model means that [Plaintiff's] revenue and profits correspond to the number of homes it manages." *Id.* at ¶ 17. "Because there are only a finite number of vacation homes to rent in a given area, companies

operating in the same geographic area necessarily compete for opportunities to rent the same properties." *Id.* at ¶ 18.

With the goal of increasing its market share, Defendant "sent out promotional mailers to homeowners with properties located in the same geographic areas where [Plaintiff] manages vacation rental properties." *Id.* at ¶¶ 29-30. In January 2021, Defendant "began a campaign to systematically contact and try to poach business from Homeowners under exclusive contract with [Plaintiff]. In many instances, [Defendant's] representatives have made false or misleading statements about [Plaintiff] to these Homeowners." *Id.* at ¶ 32. As outlined below, these allegedly false statements are the backbone upon which Plaintiff's Lanham Act claim rests.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not

operating in the same geographic area necessarily compete for opportunities to rent the same properties." *Id.* at ¶ 18.

With the goal of increasing its market share, Defendant "sent out promotional mailers to homeowners with properties located in the same geographic areas where [Plaintiff] manages vacation rental properties." *Id.* at ¶¶ 29-30. In January 2021, Defendant "began a campaign to systematically contact and try to poach business from Homeowners under exclusive contract with [Plaintiff]. In many instances, [Defendant's] representatives have made false or misleading statements about [Plaintiff] to these Homeowners." *Id.* at ¶ 32. As outlined below, these allegedly false statements are the backbone upon which Plaintiff's Lanham Act claim rests.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not

bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Once the complaint is stripped of conclusory statements, the judge then applies "judicial experience and common sense" and considers "obvious alternative explanations" to determine if the complaint states a plausible cause of action. *Iqbal*, 556 U.S. at 679, 682 (quoting *Twombly*, 550 U.S. at 567) (internal quotation marks omitted).

In addition to the general pleading requirements, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened standard requires a party to allege "the time, place and specific content of the false representation as well as the identities of the parties to the misrepresentation." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The party must identify "'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. General Dynamics c4 Systems, Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010)) (internal quotation marks and citations omitted). The purpose of Rule 9 is three-fold:

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs';
>
> (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and
>
> (3) to 'prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

# DISCUSSION

To prevail on a false advertising claim under the Lanham Act, Plaintiff must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs. Inc.*, 758 F.3d 1069, 1072-73 (9th Cir. 2014) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). As this claim sounds in fraud, Plaintiff must meet the heightened pleadings standards of rule 9(b). *SKEDKO, Inc. v. ARC Prods., LLC*, 2014 WL 585379, at *2 (D. Or. Feb. 13, 2014) (listing cases).

As relevant here, not just any fraudulent misrepresentation suffices to form the basis of a claim under the Lanham Act. Instead, the Act requires that the misrepresentation take place in "commercial advertising or promotion." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114-15 (9th Cir. 2021) (quoting 15 U.S.C. § 1125(a)(1)(B)). In the Ninth Circuit, this means:

> (1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) *that is sufficiently disseminated to the relevant purchasing public*.

*Id.* at 1115 (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).

The question here is whether Defendant's alleged misrepresentations were "sufficiently disseminated." Ordinarily, "the actions must be 'part of an organized campaign to penetrate the relevant market,' which typically involves 'widespread dissemination within the relevant industry.'" *Id.* at 1121 (citations omitted). To answer this question, the Court turns to the specific alleged falsehoods as laid out in the complaint. Each communication came in the form of a phone call from an employee or representative of Defendant to an individual under contract with Plaintiff to manage their vacation rental property. The purpose of each call was to convince the individual to switch companies and allow Defendant to manage the property.

1. In January 2021, an employee of Defendant called Aleksander Tamayo "and tried to persuade him to" switch from Plaintiff to Defendant. Compl. at ¶ 36. The representative stated there were "reviews on VRBO for [Plaintiff] stating that there is a lack of cleanliness," that Plaintiff "had no manager for negative reviews," and claimed Defendant "could manage the property better." *Id.* at ¶ 37. Plaintiff alleges the statements "were false because [Plaintiff] does have multiple managers to manage negative reviews." *Id.* at ¶ 39.

2. On January 14, 2021, a representative of Defendant informed Robert Sesar that Defendant "had heard a lot of complaints about [Plaintiff] and its housekeeping teams." *Id.* at ¶ 42.

3. In January 2021, a representative of Defendant informed John Reilly that homeowners had switched from Plaintiff to Defendant over a "lack of cleanliness." *Id.* at ¶ 48. "When Mr. Reilly asked [the representative] for references or other information to substantiate her representations, however, [the representative] was unable to provide any corroborating information." *Id.* The representative also "provided Mr. Reilly with a document purporting to compare the rental income he could earn if he" switched from Plaintiff to Defendant. *Id.*

4. On February 13, 2021, a representative of Defendant contacted Kelly Gresh and informed her Defendant "had been talking to a lot of unhappy [Plaintiff] customers." *Id.* at ¶ 52.

5. In February 2021, a representative of Defendant contacted Barbara Browne and "led her to believe during the first minutes of the call that he was associated with

[Plaintiff] (even though he was not) before trying to persuade her to leave [Plaintiff] and switch management of the" home to Defendant. *Id.* at ¶ 59.

The above five phone calls are the lone allegations containing any alleged false or misleading statement on behalf of Defendant.[2] Putting aside for now the question of whether some of the above communications—such as a statement that Defendant could manage the property better—are in fact actionable, the relevant question is whether these five phone calls qualify as sufficient dissemination to the purchasing public under the Lanham Act.[3]

Five calls to potential customers, even coming during a short period of time, do not typically qualify as the "widespread dissemination within the relevant industry" seen in false advertising claims. *Ariix*, 985 F.3d at 1121 (citation and quotations omitted). And while Plaintiff alleges Defendant engaged at times in an actual widespread promotional campaign in the relevant market, Plaintiff does not allege those advertisements contained any false or deceptive representations. *See* Compl. ¶¶ 29-31 (alleging Defendant "sent out promotional mailers to homeowners" "with the goal of increasing its market share in these areas" with a note stating the "letter is not intended to solicit the breach of any exclusive agreement for rental property

---

[2] Plaintiff includes allegations of early 2021 phone calls to Steve Sager, *id.* at ¶ 55, "the husband of Sarah Behr," *id.* at ¶ 61, and Jim Prairie, *id.* at ¶ 62. Plaintiff, however, makes no attempt to plead any false or misleading statement during these calls. That the individuals did not know how Defendant obtained their unlisted phone numbers, or that the individuals did not wish to speak to a representative of Defendant, does not give rise to a false advertising claim under the Lanham Act.

[3] Another question to consider on any amended pleading is whether it is appropriate for the Court to take judicial notice of the fact that there are dozens of reviews online predating the allegedly false statements that take issue with the cleanliness of properties managed by Plaintiff. As Plaintiff's claim relies primarily on accusations of uncleanliness, and as this would appear to be an easy factual issue to resolve, the Court could consider some targeted discovery limited to this issue and Defendant's knowledge of it. This is not to say Plaintiff necessarily has a reputation for uncleanliness. Only that in the vacation rental industry, a company essentially arguing that it had no reports of uncleanliness appears to be patently unreasonable. This is akin to a restaurant, no matter how esteemed, arguing it had never served one customer who walked away unsatisfied.

management."). Plaintiff's allegations of five distinct phone calls, only four of which mention cleanliness, stands in stark contrast to other Lanham Act claims courts have found to allege sufficient dissemination.

In *Ariix*, the speech consisted of a nutritional supplement guide used by "sales representatives in the direct marketing supplement industry." 985 F.3d at 1111. The court spent little time in concluding the Plaintiff sufficiently pled the dissemination element because the complaint alleged the guide "is specifically designed for and marketed to tens of thousands of Usana sales representatives, who are told that referring prospective customers to the guide is one of the most effective ways to sell Usana products." *Id.* at 1121. Similarly, "broad dissemination of pieces of promotional literature to thousands of accounts [by] over 2,000 sales representatives and employees" qualified as sufficient dissemination to the purchasing public. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008). There, the Ninth Circuit noted that a "handful of statements to customers" would not suffice as sufficient dissemination in the typical industry at issue. *Id.*

That said, there are exceptions to the typical rule and, depending on the relative market at issue, communications made to only one prospective customer may qualify as sufficient dissemination under the right circumstances. "Where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act." *Coastal Abstract Serv.* 173 F.3d at 735 (quoting *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996)). There, the specific market contained "only two or possibly three" customers for the specific product at

issue. *Id.* Therefore, dissemination to only one of those potential customers qualified, based on the particulars of that specific market, as sufficient dissemination to qualify as a promotion under the Lanham Act. *Id.*

Here, the complaint contains no specific factual allegations that the market for managing vacation rental properties is so limited that communications reaching just five consumers is dissemination sufficient to qualify as commercial advertising. Regarding this element, the complaint alleges:

> 73. The statements by [Defendant's] representatives were disseminated sufficiently to the relevant purchasing public because there are a finite and relatively low number of homes suitable for short term vacation rental management in the relevant geographic areas, and [Defendant] disseminated these statements to many homeowners in these markets.
>
> 74. On information and belief, based on the similarity of the statements made by [Defendant's] representatives in such a short period of time to the same target audience (homeowner's currently under contract with [Plaintiff]), [Defendant's] management directed its sales representatives to contact homeowners who are managed by [Plaintiff] and disseminate false and misleading statements about [Plaintiff] as part of an organized campaign to penetrate the relevant market.

These allegations, at least for the purpose of determining the relevant market, are not entitled to a presumption of truth because they contain no specific, factual allegations regarding the market. To be sure, the market for vacation rental homes in Oregon is "finite." So too are the markets for hamburgers, minivans, and every other marketable product the Court can dream up. But a handful of phone calls from Ronald McDonald himself to potential burger buyers falsely touting the health benefits of Big Macs would not support a claim for false advertising under the Lanham Act. Those "handful of statements to customers" would quite clearly not suffice as

sufficient dissemination, despite the "finite" nature of the hamburger market. *Newcal Indus.*, 513 F.3d at 1054.

And the allegations in the complaint (along with common sense) indicate that the "relatively low number of homes suitable for short term vacation rental management in the relevant geographic areas" results in a market much larger than Plaintiff would lead the Court to believe. After all, a "relatively low number of homes" is itself relative. Relatively low number compared to what? The complaint offers clues.

Plaintiff alleges that the relevant market is large enough to justify not only an Oregon Coast headquarters in Lincoln City, but a Central Oregon headquarters in Bend. Compl. at ¶ 13. Additionally, Plaintiff "has local offices and locally-based staff and support teams in Bella Beach, Waldport, Depoe Bay, Neskowin, Pacific City, Manzanita, Seaside, and Sunrier." *Id.* Additionally, the complaint alleges that "[t]he short-term vacation rental industry has grown rapidly in Oregon[.]" *Id.* at ¶ 11. These allegations indicate that the market is not unique or small enough where Defendant's "handful of statements to customers" qualify as sufficient dissemination to constitute commercial advertising in Oregon's short term vacation rental management market. *See Newcal Indus.*, 513 F.3d at 1054.

Additionally, the complaint confirms the market is large enough that Plaintiff has "multiple managers to manage negative reviews." Compl. at 65. That Plaintiff requires multiple managers to respond to negative reviews in a market with a "relatively low number of homes" appears to confirm that either (1) the market is larger than argued by Plaintiff or (2) Plaintiff has bigger problems than Defendant's allegedly misleading phone calls. Other courts have dismissed

Lantham Act claims where the Plaintiff "failed to allege facts identifying the relevant groups of purchasers" which would enable the court to determine the number of prospective purchasers in the relevant market. *See Opeanwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 2621872, at *5 (N.D. Cal. 2016); *Oracle Am., Inc. v. Terix Comput. Co.*, 2014 WL 5847532, at *10 (N.D. Cal. 2014). In contrast, Plaintiff's allegations here appear to confirm the relative market is too large to support Plaintiff's claim based on a few isolated communications.

Despite the strong indications that Plaintiff's Lanham Act claim is fatally flawed, the Court will, out of an abundance of caution, allow Plaintiff an opportunity to replead to clarify why this specific market renders a few phone calls sufficient to qualify as widespread dissemination to the relevant consumer. As noted above, if Plaintiff succeeds in convincing the Court the calls qualify as commercial advertising, the Court will consider expedited, targeted discovery regarding the falsity element; i.e., whether Defendant knew some vacation rental owners stopped working with Plaintiff over concerns regarding cleanliness. This seems like an odd claim for Plaintiff—a hospitality company with at least 10 offices and multiple managers responding to negative reviews—to advance. After all, even the Ritz Carlton has guests unhappy with the accommodations. But the Court will allow Plaintiff the opportunity to pursue its claim that when Defendant made the statements, it lacked knowledge that some of Plaintiff's customers switched to Defendant over housekeeping concerns.

/ / / /

/ / / /

/ / / /

## CONCLUSION

Defendant's motion to dismiss, ECF No. 7, is GRANTED. Plaintiff's Lanham Act claim is DISMISSED, without prejudice. Plaintiff is granted 30 days to file an amended complaint or, in the alternative, file a motion to remand this action to state court.

IT IS SO ORDERED.

DATED this 21st day of June, 2021.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge
