IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEREDITH LODGING LLC, an Oregon limited liability company; MEREDITH LODGING OREGON COAST LLC, an Oregon limited liability company; MEREDITH LODGING CENTRAL OREGON LLC, an Oregon limited liability company,

Plaintiffs,

v.

VACASA LLC, a Delaware limited liability company,

Defendant.

Case No. 6:21-cv-326-MC

OPINION AND ORDER

---

MCSHANE, Judge:

Plaintiff Meredith Lodging LLC and two wholly owned subsidiaries (collectively, "Plaintiff") bring one claim of false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) against Defendant Vacasa LLC.[1] The parties are market competitors, both managing vacation rental properties located in Oregon. Plaintiff alleges Defendant "has embarked on a smear campaign surgically targeted at [Plaintiff's] homeowner customers,

[1] Plaintiff also brings claims of defamation and trade libel under Oregon law. As mentioned below, the Court declines to exercise supplemental jurisdiction over those claims.

designed to unfairly snuff out that competition." Pl.'s Compl. ⁋ 1; ECF No. 1. Although the Court suspected Plaintiff's claim was fatally flawed, it granted Plaintiff an opportunity to clarify why the specific market in question rendered just five phone calls sufficient to qualify as widespread dissemination to the relevant consumer. Op. & Order 11, ECF No. 17. Defendant again moves to dismiss, arguing Plaintiff's amended complaint still lacks allegations of sufficient dissemination necessary to constitute "commercial advertising" under the Lanham Act. Def.'s Rep. 3, ECF No. 27. As outlined below, the Court agrees.

## BACKGROUND

The Court outlined the relevant background in its previous opinion granting Defendant's initial Motion to Dismiss. Op. & Order 2-3. As the parties are familiar with the facts, the Court will not repeat that background section here.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material

fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Once the complaint is stripped of conclusory statements, the judge then applies "judicial experience and common sense" and considers "obvious alternative explanations" to determine if the complaint states a plausible cause of action. *Iqbal*, 556 U.S. at 679, 682 (quoting *Twombly*, 550 U.S. at 567) (internal quotation marks omitted).

In addition to the general pleading requirements, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened standard requires a party to allege "the time, place and specific content of the false representation as well as the identities of the parties to the misrepresentation." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The party must identify "'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. General Dynamics c4 Systems, Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010)) (internal quotation marks and citations omitted). The purpose of Rule 9 is three-fold:

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs';
>
> (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and
>
> (3) to 'prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

**DISCUSSION**

To prevail on a false advertising claim under the Lanham Act, Plaintiff must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs. Inc.*, 758 F.3d 1069, 1072-73 (9th Cir. 2014) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). As this claim sounds in fraud, Plaintiff must meet the heightened pleadings standards of rule 9(b). *SKEDKO, Inc. v. ARC Prods., LLC*, 2014 WL 585379, at *2 (D. Or. Feb. 13, 2014) (listing cases).

As relevant here, not just any fraudulent misrepresentation suffices to form the basis of a claim under the Lanham Act. Instead, the Act requires that the misrepresentation take place in "commercial advertising or promotion." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114-15 (9th Cir. 2021) (quoting 15 U.S.C. § 1125(a)(1)(B)). In the Ninth Circuit, this means:

> (1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) *that is sufficiently disseminated to the relevant purchasing public*.

*Id.* at 1115 (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).

This Court previously speculated that the relevant purchasing public was larger than Plaintiff argued in its initial complaint. Op. & Order 10. In its amended complaint, Plaintiff attempts to whittle down the potential purchasing public to homeowners under contract with Plaintiff in Lincoln and Deschutes Counties, because the calls they specifically allege contained false or misleading information were placed to homeowners in these counties. Def.'s Mot. 7, ECF No. 20; *see* Am. Compl. ⁋⁋ 93, ECF No. 18. Plaintiff's amended complaint, however, fails to explain why Defendant, a competitor that allegedly targeted homes under management by Plaintiff, would not target the vacation homes located in the two other counties where Plaintiff alleges such homes are located (Tillamook and Clatsop Counties). Def.'s Rep. 4. Regardless, even accepting Plaintiff's strained attempt to minimize the relevant market results in a market of approximately 520 homeowners. Am. Compl. ⁋ 94. Additionally, as in the original Complaint, Plaintiff fails to demonstrate that the relevant market is unique or small enough where Defendant's alleged "handful of statements to customers" would qualify as sufficient dissemination in a commercial advertising context. *See* Op. & Order 10 (quoting *Newcal Indus. Inc. v. IKON*, 531 F.3d 1038, 1054 (9th Cir. 2008) (noting the allegations that Plaintiff has two headquarters along with eight local offices, with numerous managers responding to negative reviews, indicates the market "is too large to support Plaintiff's claim based on a few isolated communications.").

The question here, as with the original Complaint, is whether Defendant's alleged misrepresentations were "sufficiently disseminated." *Ariix*, 985 F.3d at 1115. Ordinarily, "the actions must be 'part of an organized campaign to penetrate the relevant market, which typically

involves 'widespread dissemination within the relevant industry.'" *Id.* at 1121 (citations omitted). The organized campaign alleged by Plaintiff in its amended complaint is virtually the same as the organized campaign alleged in its initial complaint, consisting of 10 phone calls placed by Defendant's representatives to homeowners under contract with Plaintiff. While a common theme of attempting to persuade homeowners to switch management companies existed throughout, none of the calls followed a predetermined script.[2] Additionally, instead of targeting specific homeowners during specific times, these calls were placed sporadically throughout late 2020 and early 2021 and targeted homeowners who lived in different states and owned homes in different parts of Oregon. *See* Am. Compl. ⁋ 22.

Plaintiff relies on a case out of the Sixth Circuit, *Grubbs*, to support their argument that an organized campaign did take place. In *Grubbs*, the defendant sent identical emails to each of the plaintiff's 22 customers to inform them that defendant would be taking over plaintiff's responsibilities. *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 790 (6th Cir. 2015). The fact that the defendant targeted all the plaintiff's clients in *Grubbs* demonstrates how vastly different *Grubbs* is from the case at issue. Calling 10 out of more than 500 customers and attempting to persuade them to switch companies differs significantly from sending the same email to 22 out of 22 customers and informing them that their business affairs would be handled by a new company. The fact that Defendant's representatives did not follow a script or target a specific

---

[2] All 10 calls alleged by Plaintiff contained different content. As outlined in further detail below, two phone calls did not allege false statements, three phone calls alleged cleanliness complaints, four phone calls alleged increased revenue for switching, one phone call left a homeowner confused about a representative's affiliation, and one phone call left a homeowner confused about a representative's affiliation and alleged that Defendant could better manage the home.

subset of homeowners under contract with Plaintiff, coupled with Plaintiff's misplaced comparison of the case at hand to *Grubbs*, merely confirms that the alleged falsehoods were not "an organized campaign" sufficient to constitute "widespread dissemination within the relevant industry." *Ariix*, 985 F.3d at 1121 (citation and quotations omitted)..

Consulting Ninth Circuit precedent is helpful for determining what can satisfy the commercial advertisement provision of sufficient dissemination under the Lanham Act. If the communication is not commercial advertising or promotion, the Lantham Act does not prohibit it. *Ariix*, 985 F.3d at 1114-15. In *Ariix*, the plaintiff alleged that a nutritional supplement guide written and distributed by the defendant was "specifically designed for and marketed to tens of thousands of [a competitor's] sales representatives," prompting the court to hold that the defendant sufficiently disseminated the guide. *Id.* at 1121-22. Similarly, in *Newcal*, the court held that the defendant's broad distribution of promotional literature to thousands of plaintiff's customers clearly constituted sufficient dissemination. *Newcal*, 513 F.3d at 1054. In *Ariix* and *Newcal*, both pamphlets were disseminated to a wide audience and contained the same commercial speech throughout. In the case at hand, Plaintiff alleges Defendant placed 10 phone calls to a market of over 500 customers. Additionally, Defendant made the sporadic communications over a period of several months and each call contained different alleged falsehoods.[3] The vast differences between the alleged scheme here, and those at issue in *Grubbs*, *Ariix*, and *Newcal* merely confirms that Plaintiff's allegations fail to show that Defendant's

[3] As demonstrated below, some of the calls did not contain any alleged falsehoods.

allegedly false statements were not sufficiently disseminated to qualify as commercial advertising under the Lanham Act.

Under certain circumstances, communications made to a small number of customers may qualify as sufficient dissemination. In *Coastal*, the relevant purchasing public consisted of three entities, so communications made to only one specific customer qualified as sufficient dissemination. 173 F.3d at 735. The instant case differs significantly from the situation in *Coastal*, because only 10 customers out of over 500 were allegedly targeted by Defendant's representatives.[4] Plaintiff's amended complaint does not contain any specific factual allegations that the market for managing vacation rental properties is so limited that communications reaching 10 out of over 500 consumers is widespread dissemination sufficient to qualify as commercial advertising.

This Court previously addressed the question of whether Defendant's alleged misrepresentations, which consisted of five phone calls to potential customers under contract with Plaintiff, were sufficiently disseminated. Op. & Order 6. Plaintiff's amended complaint includes three new phone calls allegedly placed in late 2020 and early 2021 to Ms. Wright, Mr. Kiel, and Mr. and Ms. Parrie. Am. Compl. ¶¶ 45-47; *id.* at ¶¶ 84-85; *id.* at ¶¶ 88-89.

During the phone call to Ms. Wright, Defendant's representative allegedly told Ms. Wright that he could not find her home on Airbnb or VRBO, and that her home "must be priced incorrectly." *Id.* at ¶¶ 46-47. A representative of Defendant left Mr. Kiel a voicemail and allegedly seemed to represent herself as a potential renter, clarifying that she was a

[4] Again, as outlined below, some of the calls contained no falsehoods at all.

representative of Defendant in a later phone call where she asked Mr. Kiel for details about his rent and other aspects of the home. *Id.* at ⁋⁋ 84-85. Mr. Parrie was contacted via cell phone by a representative of Defendant, and Ms. Parrie received a mailing from Defendant purporting to guarantee that Defendant could improve revenue on the Parries' home by $5,000. *Id.* at ⁋⁋ 88-89. The Court is deeply skeptical that any of the new allegations arise to a false or misleading statement under the Lanham Act. That said, the Court assumes, without deciding, that the new allegations in fact qualify as misleading communications under the Lanham Act.

Turning to Plaintiff's additional allegations, Plaintiff's amended complaint simply repeats the allegations from its original complaint and fails to allege new misrepresentations. These allegations can be broken down into four categories: (1) phone calls that do not allege any false statements; (2) phone calls alleging cleanliness complaints; (3) phone calls alleging increased revenue for customers who switched to Defendant; and (4) phone calls where Plaintiff's customers were allegedly misled by Defendant's representatives.

**Phone Calls That Do Not Allege Any False Statements**

1. On January 26, 2021, Ms. Sager was contacted by a representative of Defendant's who tried to persuade her to switch companies from Plaintiff to Defendant. *Id.* at ⁋ 77. Ms. Sager informed Plaintiff of the phone call, stating that she was unaware how Defendant had obtained her phone number. *Id.* at ⁋ 78.
2. On January 26, 2021, a representative from Defendant called Mr. Behr. *Id.* at ⁋ 87. Another representative later emailed Ms. Behr. *Id.*

**Phone Calls Alleging Cleanliness Complaints**

1. In January 2021, a representative of Defendant called Mr. Tamayo and told him there were "reviews on VRBO for [Plaintiff] stating that there is a lack of cleanliness." *Id.* at ⁋⁋ 51-52.[5]
2. On January 14, 2021, one of Defendant's representatives called Mr. Sesar. *Id.* at ⁋ 58. The representative told Mr. Sesar that Defendant "had heard a lot of complaints about Plaintiff and its housekeeping teams." *Id.* at ⁋ 60.
3. In or around January 2021, Mr. Reilly was contacted by a representative from Defendant. *Id.* at ⁋ 64. In a later phone call, the same representative informed Mr. Reilly that Defendant has had homeowners switch from Plaintiff because of a "lack of cleanliness." *Id.* at ⁋ 67.

**Phone Calls Alleging Increased Revenue for Switching Companies[6]**

1. On or before February 13, 2021, a representative of Defendant contacted Ms. Gresh. *Id.* at ⁋ 70. The representative told Ms. Gresh that Defendant "could guarantee the Greshes more revenue and bookings than they had with Plaintiff in the prior year." *Id.* at ⁋ 72.[7]
2. In or around January 2021, Mr. Reilly was contacted by a representative from Defendant. *Id.* at ⁋ 64. This representative provided Mr. Reilly with a document

---

[5] Plaintiff also alleges that Defendant's representative told Mr. Tamayo that Plaintiff "had no manager for negative reviews" and claimed Defendant "could manage the property better." *Id.* at ⁋ 52. The latter statement is of a "kind of general assertion [that] is classic puffery" and cannot support a Lanham Act claim. *Newcal*, 513 F.3d at 1053. And as discussed in the opinion dismissing the original Complaint, the fact that Plaintiff "employs multiple managers to manage negative revies," Am. Compl. ⁋ 54, directly contrasts Plaintiff's allegation that Defendant had no basis to tell homeowners there were complaints regarding cleanliness at some of Plaintiff's properties.
[6] As discussed above, the new allegation regarding a mailing sent to Ms. Parrie also falls under this category.
[7] Plaintiff additionally alleges that this representative told Ms. Gresh that Defendant "had been talking to a lot of unhappy Plaintiff customers." *Id.* at ⁋ 71.

purporting to compare the increased rental income he could earn if he left Plaintiff and switched to Defendant. *Id.* at ⁋ 66.

**Phone Calls Where Customers Were Allegedly Misled**[8]

1. In or around February 2021, Ms. Browne was contacted by one of Defendant's representatives. *Id.* at ⁋ 81. The representative led Ms. Browne to believe that he was a representative of Plaintiff before trying to persuade her to switch companies. *Id.*[9]

Plaintiff also contends that circumstances reasonably suggest that Defendant has cold called other homeowners under contract with Plaintiff and made similar false or misleading statements. *Id.* at ⁋ 113. Instead of providing concrete examples of these circumstances, Plaintiff essentially asks the Court to infer that because a false or misleading statement was allegedly made to one homeowner it was also made to hundreds of others, therefore constituting sufficient dissemination. Def.'s Rep. 2. The request that this Court infer hundreds of homeowners were targeted circumvents the heightened pleading standards for parties alleging fraud under Federal Rule of Civil Procedure 9(b) and is patently unreasonable. By imploring this Court to infer sufficient dissemination without alleging any new false or misleading statements, Plaintiff employs flawed logic and fails to clarify that Defendant's alleged statements were sufficiently disseminated to the relevant market. Without providing context as to why statements to just 10 customers can constitute dissemination sufficient to qualify as commercial advertising in a

[8] As discussed above, the new allegation regarding a call placed to Mr. Kiel also falls under this category.
[9] During this call, the representative also allegedly offered Ms. Browne $5,000 to switch to Defendant. *Id.* at ⁋ 82.

market of over 500 customers, Plaintiff proves they are unable to provide sufficient factual allegations necessary under the Lanham Act.

Despite this Court offering Plaintiff a second chance to clarify why this specific market renders a few phone calls sufficient to qualify as widespread dissemination to the relevant consumer, Plaintiff has failed to do so. Plaintiff's inability to comply with the Court's request proves that their claim under the Lanham Act is fatally flawed.

**CONCLUSION**

Defendant's motion to dismiss, ECF No. 20, is GRANTED. Plaintiff's Lanham Act claim is DISMISSED, with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and those claims are DISMISSED, without prejudice. 28 U.S.C. §1367(c)(3).

IT IS SO ORDERED.

DATED this 15th day of November 2021.

_______/s/ Michael McShane______
Michael McShane
United States District Judge